UNITED STATES of America,

v.

Joseph N. WILLIAMS, Appellant,

No. 12314.

United States Court of Appeals
Third Circuit.

Argued Dec. 19, 1957.

Decided March 25, 1958.

Leslie P. Hill, Philadelphia, Pa., for appellant.

Henry J. Morgan, Philadelphia, Pa. (Harold K. Wood, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The defendant was prosecuted on two counts which charged him with knowingly and willfully failing to make and file income tax returns for 1953 and 1954. See Internal Revenue Code of 1939, § 145(a); Internal Revenue Code of 1954, § 7203, 26 U.S.C.A. § 7203. He was convicted on both counts and now appeals.

The only ground alleged in the appeal is the refusal of the trial judge

to grant a continuance when the case was called for trial. It appears that information was filed on March 12, 1957. The defendant was arraigned on May 24, 1957 and came without counsel. He entered a plea of not guilty and was notified that his case would come up for trial on June 17, 1957. It was only on Saturday, June 15, 1957, that he called a lawyer by telephone and made arrangements to meet him at the court house on Monday, June 17th.

The lawyer thus secured, who has been retained as counsel in this appeal, moved for continuance on the ground that he had only been called into the case on Saturday and had had no time to prepare. The judge refused the continuance. There was no reversible error in this.

■ It is well established that the granting of a continuance is within the discretion of the trial judge and his decision will not be disturbed except for abuse of that discretion. Avery v. State of Alabama, 1940, 308 U.S. 444, 60 S. Ct. 321, 84 L.Ed. 377; Boyer v. United States, 5 Cir., 1937, 92 F.2d 857.

There was no abuse here. This defendant had had definite notice of the time of trial from May 17th on. The evidence shows that he had also known for some time that his income tax matters were under investigation and had failed to appear at a conference called by an Internal Revenue official sometime earlier. Nor was he a person of such little experience that he did not know what was happening to him. He stated that he was an owner, buyer and seller of parcels of real estate and that on a number of occasions he had furnished bail for persons accused of crime. The district judge was clearly entitled to conclude that the failure to retain counsel promptly was an endeavor to postpone the day of trial.

Although not mentioned as a ground for appeal, there are other phases of the case which we believe should be commented upon to make sure that this defendant has been treated fairly with regard to his conviction.

■ After the verdict was returned his counsel moved for a new trial and asked for some time to get the transcript of the case to review the sufficiency of the evidence. The trial judge told him that the case had just been completed and the testimony was fresh in everybody's mind. He thereupon denied the request to postpone the filing of specific reasons for a new trial and overruled the motion. This refusal was clearly within his discretion. Fed.R.Crim.P. 33, 18 U. S.C.A.

■ The court then passed sentence without receiving a presentence report. In this he did not commit error. While the judge may ask for a presentence report he is not compelled to do so however commendable the practice. Fed.R.Crim.P. 32(c) (1), United States v. Schwenke, 2 Cir., 1955, 221 F.2d 356, United States v. Karavias, 7 Cir., 1948, 170 F.2d 968.

The petitioner appears to suggest that the immediacy of the sentencing deprived him of the opportunity to accumulate and present evidence in mitigation. However, under federal rule 32 (a) sentence is to be imposed without unreasonable delay and we have not been shown how the defendant was prejudiced in any way by the timing of the proceedings. See United States v. Tannuzzo, 2 Cir., 174 F.2d 177, certiorari denied 1949, 338 U.S. 815, 70 S.Ct. 38, 94 L.Ed. 493; Bankey v. Sanford, D.C.N. D.Ga., 74 F.Supp. 756, affirmed 5 Cir., 1947, 165 F.2d 788, certiorari denied 1948, 333 U.S. 847, 68 S.Ct. 649, 92 L. Ed. 1130.

■ The sentence imposed by the court was a severe one. The defendant was sentenced to a year's imprisonment and $10,000 fine on the first count and a year's imprisonment and $10,000 fine on the second count to run consecutively. However, the execution of imprisonment on the second count was suspended and the defendant placed on probation for five years, with special conditions among which was that fines be paid in full not later than the end of the first year of probation. So long as the sentence

imposed by the trial court is within the terms of the relevant statute the exercise of the judgment of the trial judge is not subject to review by a Court of Appeals. United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 604, and cases there cited. While the sentence was severe in this case the court was quite evidently convinced that the violation was flagrant and should be dealt with accordingly. That is a matter solely for the trial judge to determine.

The judgment of the district court will be affirmed.

BIGGS, Chief Judge (concurring).

Though I agree with all that Judge GOODRICH has said, the circumstances of this case and the nature of the grounds asserted by the defendant-appellant as his basis for a new trial suggest that additional background should perhaps be added for the benefit of the reviewing Court.

The defendant-appellant, Williams, takes the position that he was dealt with too hardily by the court below and that the sanctions of the criminal statute imposed on him were excessive in the light of all the circumstances. I think this is not so. It is becoming an unfortunate practice among defendants in criminal proceedings, especially those with prior records, to engage defense counsel to defend them very close to the time of trial, indeed, as here, almost on the last day. This results in delays and sometimes confusion when veniremen have been summonsed and the court has a heavy criminal list. The tactic employed by such defendants is based on the hope that if delays are sufficient their cases somehow will be lost track of or at least cannot be presented effectively. The defendant-appellant here had the benefit, or the detriment, of rather extensive courtroom experience over an extended period of years.[1] In compelling him to go to trial at the time set, a day nearly two months following his arraignment and more than three months after the information was returned against him, I am of the opinion that it cannot be asserted successfully that a trial judge of a very busy and overburdened court, with an extensive list of criminal jury trials, as here, abused his discretion.

At the trial the proof of the defendant-appellant's guilt, largely documentary, was overwhelming. His wilfulness was clearly demonstrated. That the defendant-appellant's gross income ex-

---

1. The defendant-appellant was arrested and tried in September 1935 on an indictment for larceny, receiving stolen goods and assault and battery. He was found not guilty. In August 1936 he was arrested and tried for aggravated assault and battery, mayhem, larceny, and fraudulent conversion. This resulted in a conviction and a sentence of one year's probation and costs. In May of 1937 he was arrested for assault and battery but this case was nol-prossed. In January 1938 he was indicted for assault and battery and was found not guilty. In November 1940 he was arrested for disorderly conduct and interfering with an officer. The case resulted in an imposition of a $500 peace bond. In June 1941 he was arrested for burglary of an automobile and tried, the trial resulting in a verdict of guilty. A new trial was granted. On the second trial the defendant-appellant was found guilty again and sentenced to 18 months to 3 years imprisonment. In February 1942 he was arrested for assault and battery and resisting arrest. The trial resulted in a verdict of guilty and he was put upon probation for one year. In April 1942, he was arrested for conducting a tenement house without a license. He was fined $10 and costs. In May 1945 he was indicted for larceny and receiving stolen goods and was found guilty and a fine of $50.00 was imposed upon him. In June 1945 he was arrested for malicious mischief but was discharged by a Magistrate. In October 1947 he was arrested for disorderly conduct and a $1000 bond was required of him. In 1951 he was indicted for forgery and embezzlement. The disposition of this case did not appear. In April 1953 he was arrested for violation of Section 601 of the Penal Code of Pennsylvania, 18 P.S.Pa. § 4601, for number writing and conspiracy and was found not guilty.

See pp. 257-275a of the transcript of the proceedings following the return of verdicts by the jury.

ceeded the statutory minimum requiring the filing of returns was all but conceded and it seemed to be the fact he had not filed any federal tax returns for some years, including the critical years 1953 and 1954. The inference, I think is irresistible that had he been allowed unlimited time to prepare his defense his counsel could scarcely have defended him better than he did for the defendant-appellant was largely without books and records. The trial court indicated with good reason that he had repeatedly committed perjury while on the stand in his own defense. His story as to the sources of his income and the amounts thereof was unbelievable and the jury obviously took that view.

Emphasis, however, is laid on the fact that the defendant-appellant's motion for a new trial was denied as soon as it was made and that he was sentenced within a few hours following the return by the jury of verdicts of guilty and that there was no pretrial investigation. Though this practice cannot be deemed to be entirely desirable, for ordinarily at least, presentence investigation should be had, I cannot conceive that in this case it worked substantial detriment to the defendant-appellant.

The trial judge afforded the defendant-appellant and his counsel opportunity to make statements prior to the imposition of sentence and statements were made. The defendant-appellant's evasiveness continued at this critical time. Prior to sentence the trial judge referred to the defendant-appellant's somewhat extended criminal record in the Courts of Pennsylvania and of Philadelphia County, making clear that in passing sentence he would have in mind only the defendant-appellant's convictions. The trial judge cogently noted that he had failed to cooperate with the Internal Revenue Bureau in respect to his civil liabilities for failure to make returns and pay taxes. The trial court then passed a sentence imposing imprisonment upon one count and putting the de-

fendant-appellant on probation on the second count with a substantial fine, and indicated to him that he would have to cooperate with the taxing authorities. As Judge GOODRICH has pointed out there can be no doubt that the trial judge acted within the purview of the law but quite aside from any technical legal view I think that the contention that the defendant-appellant was dealt with too hardily cannot be maintained. Certainly the circumstances are such that this court is not justified in setting aside the judgment of sentence, even if there were a legal basis for doing so.

HASTIE, Circuit Judge (concurring in part and dissenting in part).

I join in so much of the judgment as affirms the conviction of the defendant. However, I would vacate the sentence and remand the case for resentencing after opportunity for full presentation and deliberate consideration of the issue whether there are mitigating circumstances which warrant the imposition of less than the maximum fine and maximum imprisonment which have been imposed.

I am concerned with the total effect of a series of occurrences, the first of which was the denial of any continuance on the motion of counsel who had just entered the case and was totally unfamiliar with it at the time of trial. Sitting in a trial court I would be disposed almost routinely to grant at least a three or four day continuance to newly retained counsel where there had been no prior continuance or undue pretrial delay, even though the accused had not been diligent in employing counsel sooner. I cannot, however, avoid the conclusion that it was within the legal power and permissible discretion of the trial judge to view the matter differently and to insist that the accused pay for his lack of diligence the very high price of going to trial with the enormous handicap of counsel wholly unprepared and unfamiliar with the cir-

cumstances of the case.[1] Yet everything that followed the decision to deny a continuance must be judged in the special setting and context of a criminal case tried by counsel who has had no opportunity whatever for investigation or preparation.

The next matter of importance occurred immediately after the jury had returned its verdict and had been discharged. At that point counsel for the defendant orally proposed to move for a new trial and added: "I would like to ask leave to have an opportunity to review the record and thereafter file specific reasons with this court". The court, however, insisted that counsel then and there state his reasons for requesting a new trial. At this juncture counsel would have been well advised to point out that Rule 33 of the Federal Rules of Criminal Procedure allows "5 days after verdict" within which to make a motion for a new trial. However, counsel did not thus resist the court's requirement that he immediately state his reasons for seeking a new trial. In these circumstances it is not surprising that counsel made what unquestionably was a wholly inadequate and unpersuasive statement. The court ruled then and there that the accused should not have a new trial.

Here again there was no reversible error since counsel did not know, or did not remember, or at least did not insist that he was entitled to five days to prepare and present his new trial motion. But the result of this is that counsel, unprepared at the beginning of the trial, now loses his normal five days period to review the case and to make appropriate submission in his client's interest after trial.

The culmination of all of this followed immediately. For after denying a new trial, the court proceeded forthwith to sentence the defendant. There was no presentence investigation such as is permissible and normal, though not mandatory, under Rule 32(c) of the Federal Rules of Criminal Procedure. Again, this was not error but it represents another loss of normal opportunity to discover and consider possible mitigating circumstances.

All of these items have combined impact in their relation to the mandate of Rule 32(a) that "before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment". I have no doubt that the defendant here was properly asked whether he had anything to say before sentence was passed. But to me there is more than that to the opportunity of allocution which this rule preserves and protects. The accused is entitled both to be heard personally and to have informed professional assistance in assembling, analyzing and presenting matter in mitigation. As to this point I cannot improve upon the recent statement of the Court of Appeals for the Fifth Circuit in Martin v. United States, 1950, 182 F.2d 225, 227: " * * * [A]t the time of imposition of sentence * * * [t]here is * * * real need for counsel. * * * Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defend-

---

1. It may be noted in passing, as an indication how close this denial of any continuance was to reversible error, that had counsel insisted upon withdrawing from the case because of his total lack of preparation, it probably would have been reversible error to force the accused to trial without counsel. "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." See Johnson v. Zerbst, 1938, 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461. In making the difference between no lawyer and a totally unprepared lawyer significant here we express our willingness to impose the burden of an unprepared lawyer on a dilatory criminal defendant, although it probably would be regarded as too harsh to go beyond that point and force him to trial without any professional representation whatever.

ant's conduct; to correct any errors or mistakes in reports of the defendants' past record; and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation, or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial." Accord: Wilfong v. Johnston, 9 Cir., 1946, 156 F.2d 507.

Another Court of Appeals recently considered a situation in which counsel who appeared with the defendant at sentencing had just entered the case. Holding that such counsel could not provide the assistance to which the accused is entitled at this last important trial proceeding, the court ordered a resentencing, saying that "counsel must not only be competent but must have adequate opportunity to prepare for the assigned task. Conceivably, by intensive preparation, counsel entering the case for the first time at the sentencing stage could make an effective plea in mitigation. But here there is no showing that the substituted counsel had so prepared, or, indeed, had any opportunity to do so; * * *." Gadsden v. United States, 1955, 96 U.S.App.D.C. 162, 223 F.2d 627, 631.

In the present case, although counsel entered the case just before trial, there was never an opportunity to assemble, marshal and present in any proper and effective way whatever there may have been in mitigation. At no stage from his retention until the moment of sentencing had counsel been permitted even one working day to consult with the defendant, examine his records, interrogate people who knew him personally or in a business way, or do any of the things a lawyer should properly do to present his client in as favorable a light as is fairly and honorably possible.

There is no question but that the sentencing judge viewed the defendant in the worst possible light. It is to be remembered that the information charged only the misdemeanors of willfully failing to file income tax returns for two taxable years, and not the felony of tax fraud. On each count the defendant received the maximum prison sentence of one year, although these closely related sentences were permitted to run concurrently. In addition, although the information charged that the accused had gross income of about $3000. in one year and $3800. in the other, maximum fines of $10,000 each were imposed on the two counts. The fines aggregate three times the alleged unreported income, not to compare them with the much smaller tax payable on such income.

Again, this extreme sentence was entirely lawful. But it certainly emphasizes the judge's impression that this was just about as bad a case as could be imagined. Perhaps it was. But I cannot escape the conclusion that the whole course of the proceeding from beginning to end, as outlined above, inhibited normal opportunity to assemble and present matter in mitigation and resulted in a serious abridgement of the right of allocution which Rule 32(a) safeguards.

On this appeal counsel for appellant, presumably now fully informed about the transactions upon which this prosecution was predicated, has expressed his desire to show mitigating circumstances rather than any confidence that innocence can be proved. I think he has not had an adequate opportunity to make such a showing as Rule 32(a) contemplates. This constituted reversible error in sentencing. The entire case considered I think it fair and appropriate to vacate the sentence in order that the trial court may receive and fully and deliberately consider whatever information may be available, both favorable and unfavorable to the accused, on the question of appropriate punishment before reimposing a sentence which the accused must accept.

To this extent I dissent from the decision of the court.