UNITED STATES of America

v.

Frank P. LAURELLI.

Cr. Nos. 12809, 12877.

United States District Court
M. D. Pennsylvania.
Aug. 19, 1960.

Oliver Dibble, Sp. Asst. to Atty. Gen., for the Government.

G. Fred DiBona, Philadelphia, Pa., for defendant.

JOHN W. MURPHY, Chief Judge.

Defendant, found guilty of violating 18 U.S.C.A. § 201, § 1621,[1] moves for judgment of acquittal or a new trial, asserting the verdict was against the evidence, the weight of the evidence, the law, and the charge of the court, reserving the right to file additional reasons after the transcript of testimony was filed. No request was made to or extension allowed by the court as required by Rule 45(b), F.R.Crim.P. 18 U.S.C.A.

Thereafter defendant asserted error in the denial of his pretrial motion for a continuance;[2] error in the conduct of the trial, in rulings on evidence and in the charge of the court; none involved after discovered evidence.

■ Timeliness of filing and of extensions granted is a jurisdictional requirement. Defendant argues that the rule applies only to motions, United States v. Bertone, 3 Cir., 1957, 249 F.2d 156, 158; United States v. Anthony, D.C.M.D.Pa.1956, 145 F.Supp. 323, 333, note 7; Drown v. United States, 9 Cir., 1952, 198 F.2d 999, 1007, not to additional reasons. But see United States v. McCurry, D.C.E.D.Pa., 146 F.Supp. 109, 111, affirmed 3 Cir., 1957, 248 F.2d 116; United States v. Stirone, D.C.W.D.Pa., 168 F.Supp. 490, 501–502, affirmed 3 Cir., 1959, 262 F.2d 571, 577–578, reversed on other grounds 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, and see United States v. Williams, 3 Cir., 1958, 254 F.2d 253, 254; United States v. Smith, 1947,

1. Offer to bribe and perjury—tried jointly by agreement.

2. Based upon a newspaper item on the first morning of the trial. See Francis v. Southern Pacific Co., 10 Cir., 162 F.2d 813, 818, affirmed, 1948, 333 U.S. 445, 450–451, 68 S.Ct. 611, 92 L.Ed. 798. None of the jurors, carefully examined on voir dire, had read the item in question. A fair and impartial jury was selected. Cautionary instructions were given. See United States v. Katz, D.C. M.D.Pa., 78 F.Supp. 435, 439, affirmed 3 Cir., 1949, 173 F.2d 116, 117; Holt v. United States, 1910, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021; United States v. Howell, 3 Cir., 1956, 240 F.2d 149, 158; Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, 116, 133 A.L.R. 1040, certiorari denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531, rehearing denied 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564; United States v. Hoffa, D.C.S.D.N.Y.1957, 156 F.Supp. 495, 499–500, and see United States v. Williams, 3 Cir., 1958, 254 F.2d 253, 254.

331 U.S. 469, 472, 476, 67 S.Ct. 1330, 91 L.Ed. 1610.[3]

In view of United States v. Smith, supra, 331 U.S. at page 472, 67 S.Ct. at page 1332, as to the sufficiency of generality of reasons and Rule 52(b) Id., we assume arguendo, apart from the denial of the motion for a continuance, the subject matter of the additional reasons is covered by the original motion. Upon careful examination we find no merit in any of defendant's reasons.

First as to the motion for judgment of acquittal:

From a study of the entire record, United States v. Calderon, 1954, 348 U.S. 160, 164, note 1, 75 S.Ct. 186, 99 L.Ed. 202; United States v. Weinberg, D.C. M.D.Pa., 129 F.Supp. 514, 516, note 2, affirmed 3 Cir., 1955, 226 F.2d 161, certiorari denied 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815, viewing the evidence and all inferences reasonably deducible therefrom[4] in the light most favorable to the government, we find substantial competent evidence that the United States Army Corps of Engineers engaged a prime contractor to construct, inter alia, Warehouse No. 6, at the Tobyhanna Signal Depot in this district, and an Architect-Engineer to supervise, inspect and assure the work was done in accordance with approved drawings and specifications.[5] The prime contractor subcontracted all painting to John B. Kemmel Co., Inc. Defendant was Kemmel's superintendent of painting; Paul Judge, employed by the Architect-Engineer, an inspector of painting on the roof.

Included among the steel work on the roof were "bulb tees",[6] tack welded to purlins. Between adjacent bulb tees fibre glass was laid to form a supporting surface upon which gypsum was poured. The specifications provided that the bulb tees should be given a shop coat of protective paint followed by two coats of interior flat oil paint.[7] The shop coat was applied before the bulb tees arrived at the Depot. It was defendant's responsibility to see that two additional coats were applied to the entire bulb tee. Two field coats were never applied. For a time defendant's men painted the entire bulb tee with a single coat. A question arose as to the wisdom or necessity of painting the tops, sides and upper portions of the lips thereof, i. e., whether the paint would adhere thereto. Although the Architect-Engineer, the Corps of Engineers and Kemmel discussed the problem, no ruling was ever made. Judge never said not to paint the tops, but, on the contrary, stated bulb tees would have to be painted according to specifications, at least as to applying one field coat to the bottoms thereof, the portion visible from the ground after the fibre glass was in place and the gypsum poured. Defendant ordered the painters to paint only the bottoms of the bulb tees.

March or April of 1953, defendant asked Judge in the field office to let him get away without painting the tees and if he did he would give him $20 every Friday and assure him the supervisors

---

3. On the civil side, see Fine v. Paramount Pictures, 7 Cir., 1950, 181 F.2d 300, 303; Marks v. Philadelphia Wholesale Drug Co., D.C.E.D.Pa., 125 F.Supp. 369, 374, affirmed 3 Cir., 1955, 222 F.2d 545; John E. Smith's Sons Co. v. Latimer Foundry & Machine Co., D.C.M.D. Pa., 19 F.R.D. 379, 381, affirmed 3 Cir., 1956, 239 F.2d 815, 817; Freid v. McGrath, 1942, 76 U.S.App.D.C. 388, 133 F.2d 350, 355.

4. We do not weigh the evidence or determine the credibility of the witnesses. Glasser v. United States, 1942, 315 U. S. 60, 71, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Migliorino, 3 Cir., 1956, 238 F.2d 7, 10.

5. See United States v. Gilboy, D.C.M.D. Pa.1958, 160 F.Supp. 442; United States v. Tucker, D.C.M.D.Pa., 161 F.Supp. 289, reversed 3 Cir., 1959, 267 F.2d 212; United States v. Kennel, D.C.M.D.Pa. 1958, 160 F.Supp. 718.

6. Also known as T steels, T rails or sub-purlins. See Govt. Ex. 6.

7. Par. 36.07, subpar. (c), "Metal Surfaces".

would never check his work.[8] John Grady, a clerk, testified defendant said, "Judge, I would like to put you on the payroll if you will promise not to inspect the painting of the structures on the tees or the steel". Judge said he wanted nothing to do with it and, upon Grady's suggestion, reported the incident to Simon Carman, his superior. Defendant continued painting the bottoms of the bulb tees. As they were finishing the job defendant asked the painters to sign an affidavit without their knowing the contents thereof. The witness Cecci testified defendant told him the reason for the affidavit was to show that two coats of paint were applied. As to defendant's conduct, see United States v. Katz, supra, 78 F.Supp. at page 438.

The end of 1953 the Corps of Engineers dismissed the Architect-Engineer, and in February 1954 named John O'Donnell Chief Inspector. Shortly thereafter defendant beckoned O'Donnell into an office closet and offered him a "roll of bills" saying "the boss sent this up to you—Mr. Kemmel". O'Donnell, refusing the offer, told defendant he would have to follow the plans and specifications, and reported the incident to his superior. When O'Donnell left his superior's office defendant renewed the offer and tried to force its acceptance. Several months later when O'Donnell told defendant he would have to paint an oil tank and was on his way to report the incident, defendant again urged him to accept the money.

■■■ Evidence of other offenses is ordinarily inadmissible in a criminal prosecution. However, when intent is an essential element of the offense charged, other offenses similar to and not too remote from the crime charged may be shown. Ahrens v. United States, 5 Cir., 1959, 265 F.2d 514, 516; Morlan v. United States, 10 Cir., 1956, 230 F.2d 30, 32; Michelson v. United States, 1948, 335 U.S. 469, 475, note 8, 69 S.Ct. 213, 93 L.Ed. 168. As to corroboration, see United States v. Wall, 7 Cir., 1955, 225 F.2d 905, 907, certiorari denied 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816. "Evidence of other offenses may be received if relevant for any purpose other than to show a mere propensity or disposition on the part of the defendant to commit the crime." United States v. Stirone, supra, 262 F.2d at page 576; and see United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 80, 156 A.L.R. 337. "[T]he fact that they occurred subseqeunt to the crime named in the indictment is no bar to admissibility", United States v. Prince, 3 Cir., 1959, 264 F.2d 850, 852, note 1; United States v. Alker, 3 Cir., 1958, 260 F.2d 135, 157, certiorari denied 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571.[9] At the time of its reception, United States v. Alfano, 3 Cir., 1945, 152 F.2d 395, 397; Rakes v. United States, 4 Cir., 1948, 169 F.2d 739, 745, and in our charge, we limited the purpose of such evidence very strictly. See United States v. Stirone, supra, 262 F.2d at page 577.[10]

Defendant under oath before the Grand Jury,[11] when asked " * * * did you * * * ask * * * Judge * * * to permit your men to omit painting the 'T' steel supports on the roof * * *?[12] * * * did you say

---

8. Judge understood defendant meant to excuse him from painting any part of the bulb tees.

9. As to remoteness—6 months—see United States v. Schaffer, 2 Cir., 266 F.2d 435, 442, affirmed, 1960, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921.

10. As to government counsel's reference thereto in the opening statement, see United States v. Uram, 2 Cir., 1945, 148 F.2d 187, 189; Williams v. United States, 5 Cir., 1931, 46 F.2d 731, 732; Butler v. United States, 4 Cir., 1951, 191 F.2d 433, 435; Kraus v. United States, 8 Cir., 1937, 87 F.2d 656.

11. A competent tribunal duly empaneled inquiring whether any violation of federal criminal laws occurred during the construction of the Depot. United States v. Neff, 3 Cir., 1954, 212 F.2d 297, 301–302. As to materiality, see Id., at page 311.

12. In court defendant twice said he understood the question as to "T steel supports" to mean the "subpurlins". See note 6 supra.

to \* \* \* Judge \* \* \* that if he would do this you would see that he would receive $20 every Friday?" answered each question "No, sir". Q. " \* \* \* no such conversation, either in those words, or words to that effect, or in substance, like that was ever said \* \* \*?" A. "That is right."[13]

■ There was therefore an offer of money to Judge, an employee acting for and on behalf of the United States and its Army Corps of Engineers, in an official function, under their authority, with intent to influence his decision or action as to painting requirements under the specifications, with intent to allow a fraud to be committed on the United States and its Corps of Engineers—a violation of § 201. See United States v. Raff, D.C.M.D.Pa.1958, 161 F.Supp. 276; Fall v. United States, 1931, 60 App.D.C. 124, 49 F.2d 506, 509; Schneider v. United States, 9 Cir., 1951, 192 F.2d 498; Krogmann v. United States, 6 Cir., 1955, 225 F.2d 220; United States v. Troop, 7 Cir., 1956, 235 F.2d 123.

■■ United States v. Rose, 3 Cir., 1954, 215 F.2d 617, 622, teaches: "Perjury is the willful, knowing and corrupt giving, under oath, of false testimony material to the issue or point of inquiry. An essential element is that the defendant must have acted with a criminal intent—he must have believed that what he swore to was false and he must have had the intent to deceive. If there was a lack of consciousness of the nature of the statement made or it was inadvertently made or there was a mistake of the import, there was no corrupt motive." The evidence must meet "the well-settled requirement that the elements of the crime of perjury must be proved by clear and convincing testimony to a moral certainty and beyond all reasonable doubt. Evidence which is merely probable is not enough".[14]

■ To justify a conviction of perjury the government must establish the falsity of the statements made by defendant under oath by testimony of two independent witnesses, or of one witness and corroborating circumstances. Weiler v. United States, 1945, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; United States v. Neff, 3 Cir., 1954, 212 F.2d 297, 306.

■ Having taken an oath before the Grand Jury that he would testify truthfully, there was here substantial competent evidence of two independent witnesses as to the same transaction—see United States v. Nessanbaum, 3 Cir., 1953, 205 F.2d 93, 95, note 4—and many corroborating circumstances, proving that defendant wilfully and contrary to his oath stated material matter which he did not believe to be true, contrary to § 1621.

Defendant's motion for judgment of acquittal will be denied.

■ The trial judge is more than a moderator. It is his duty to conduct the trial, facilitate its orderly progress, and clear the path of petty obstructions to the end that the evidence will be presented honestly, expeditiously and in such form as to be readily and intelligently understood. United States v. Stoehr, supra, 100 F.Supp. at page 152-153. The court has power within reasonable bounds, United States v. Stayback, 3 Cir., 1954, 212 F.2d 313, 320; III Wigmore, supra, § 784, to ask questions. Where the circumstances warrant it the court has no more important duty.

13. Absent evidence thereon, one other question was withdrawn from the jury's consideration.

14. Defendant objects to our use of "an abiding conviction to a moral certainty" in our charge on reasonable doubt, but see United States v. Stoehr, D.C.M.D.Pa. 1951, 100 F.Supp. 143, 163, affirmed 3 Cir., 1952, 196 F.2d 276, 33 A.L.R.2d 836; Wilson v. United States, 1914, 232 U.S. 563, 570, 34 S.Ct. 347, 58 L.Ed. 728; Holland v. United States, 10 Cir., 1954, 209 F.2d 516, 422–523, affirmed 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L. Ed. 150; cf. Commonwealth v. Kloiber, 1954, 209 F.2d 516, 522–523, affirmed 348 820, but see Goodrich, J. in United States v. Schireson, 3 Cir., 1946, 116 F.2d 881, 883, 132 A.L.R. 1157.

United States v. Amorosa, 3 Cir., 1948, 167 F.2d 596, 600.

On cross examination, having developed that Judge did not mention defendant's "attempt to pay off" in his field book but reported it to his superior, Simon Carman, defense counsel then asked whether Judge or Grady ever reported the incident in writing to the prime contractor, the Architect-Engineer, Corps of Engineer, or anyone else. When the witness answered he had reported it to the FBI, defense counsel called on the government to produce the FBI report containing the witness' statement.[15] Assuming defense counsel was laying ground for impeaching Judge's testimony, see United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, 251; 2 Henry, supra, § 803; Walden v. Finch, 1872, 70 Pa. 460, 463; Commonwealth v. Dilsworth, 1927, 289 Pa. 498, 502–503, 137 A. 683, 684; McGill v. United States, D. C.Cir., 1959, 270 F.2d 329, the court asked and the witness answered that he had told the FBI what he testified to in court. Non constat, the government was ordered to produce the report for defense counsel's inspection and use, Palermo v. United States, 1959, 360 U.S. 343, 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287. Finding nothing therein helpful defense counsel returned the report.

On redirect, defense counsel having opened the subject, Judge reiterated that he had reported the incident to Carman. See United States v. Stoehr, supra, 100 F.Supp. at page 159; United States v. Lowe, 3 Cir., 1956, 234 F.2d 919, 921, 922; VI Wigmore, supra, § 1772; United States v. Sebo, 7 Cir., 1939, 101 F.2d 889, 891. The same rule applies to Judge's conversation with Grady. By way of analogy as to the report to Carman, cf. IV Wigmore, supra, § 1764; IV Wigmore Id. § 1142.

▮ Defense counsel having at great length shown failure to make a written report and thereby attempt to create the inference of recent fabrication, testimony of the witness Carman that the report was made was admissible, not to show that Judge's statement was true but that it was not a fabrication of recent date. IV Wigmore, supra, § 1129; Commonwealth v. Patskin, 1953, 372 Pa. 402, 412, 93 A.2d 704; Townsend v. United States, 3 Cir., 1939, 106 F.2d 273, 275; Goldberg v. United States, 4 Cir., 1954, 213 F.2d 734, 736, and cf. United States v. Walker Co., 3 Cir., 1945, 152 F.2d 612, 613, as to the possible inference if Carman was not called.

Having developed that Judge talked to Carman about difficulties he had with defendant in regard to having the bulb tees painted in accordance with specifications, government counsel experienced some difficulty in directing the witness Carman's attention to the incident in controversy. To help clarify the situation, the court first saw counsel at side bar; then asked to see counsel and the witness in chambers. See Cooper v. United States, 8 Cir., 1925, 9 F.2d 216, 224; United States v. Graham, 2 Cir., 1939, 102 F.2d 436, 442; DiCarlo v. United States, 2 Cir., 1925, 6 F.2d 364, 367; United States v. Rutkin, 3 Cir., 1951, 189 F.2d 431, 440; United States v. Stayback, supra, 212 F.2d at page 318.

▮ Government counsel had a duty to elicit any pertinent information the witness may have. The court may direct or make suggestions to an attorney to pursue a line of questioning if it is relevant to the case. Fischer v. United States, 10 Cir., 1952, 212 F.2d 441, 444–445; Carrado v. United States, 1953, 93 U.S.App.D.C. 183, 210 F.2d 712, 722; Levey v. United States, 9 Cir., 1937, 92 F.2d 688, 692. "He enjoys the prerogative, rising often to the standard of a duty, of eliciting those facts he deems necessary to the clear presentation of the issues * * *. To this end he may call witnesses on his own motion, adduce evidence, and himself examine those who testify * * *." United States v. Brandt, 2 Cir., 1952, 196 F.2d

15. As to the effect thereof, see 1 Henry, Pa. Evidence, 1953 Ed., § 296; United States v. Toner, D.C.E.D.Pa.1948, 77 F.

Supp. 908, 918, reversed on other grounds, 3 Cir., 1949, 173 F.2d 140.

653, 655; IX Wigmore, supra, § 2486, p. 268; Id. Vol. III § 784. He may indicate to counsel the reason for his ruling. United States v. Stoehr, supra, 100 F. Supp. at page 154.

■ A plea of surprise is not necessary, Commonwealth v. Bartell, 1957, 184 Pa.Super. 528, 544, 136 A.2d 166; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 1936, 83 F.2d 325, 334; Wheeler v. United States, 1954, 93 U.S.App.D.C. 159, 211 F.2d 19, 25; United States v. Block, 2 Cir., 1937, 88 F.2d 618, 619; United States v. Graham, supra, 102 F. 2d 436.

When government counsel sought to develop Carman's testimony as to Judge's reputation for truth and veracity, defense counsel objected and asked that government counsel be admonished for asking the question. The court asked to see counsel in chambers.[16] See Fredrick v. United States, 9 Cir., 1947, 163 F. 2d 536, 548. Counsel having indicated they wished to ask no more questions the witness was excused.

■ What was done on another building at another time under a different prime contractor and roofing subcontractor, a different kind of document, different arrangements as to responsibility for painting bulb tees, was a collateral matter.[17] Cafasso v. Pennsylvania R. Co., 3 Cir., 1948, 169 F.2d 451, 454; United States v. Stoehr, supra, 100 F.Supp. at page 155. Going into it would only confuse the issues and unduly prolong the trial. For the same reason and because it was an attempt to put their defense in on cross examination, objections to cross examination directed to show Kemmel's obligations under the other contract were sustained. See Id.

Under the circumstances the number of coats of paint required by the specifications was a question for the jury. Ries v. Dodson, 3 Cir., 1930, 46 F.2d 68, 69; Miller v. Flemming, 9 Cir., 1960, 275 F.2d 763, 765; 3 Williston on Contracts, Rev.Ed. § 616, p. 1772–1773.

As to inferences, see Tot v. United States, 1943, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519; United States v. Reginelli, 3 Cir., 1943, 133 F.2d 595, 599.

Defense counsel submitted no points for charge.

Reviewing the whole trial, placing each episode in its proper setting—see United States v. Kafes, 3 Cir., 1954, 214 F.2d 887; United States v. Stoehr, supra, 100 F.Supp. at page 164—the record leaves no doubt that the case was fairly tried and submitted to the jury in a clear, impartial and thorough charge as to both the facts and the law.

Defendant's motion for new trial will therefore be denied in an order filed herewith.

---

16. Defendant's reason No. 15 misstates the record.

17. See United States v. Kemmel, D.C.M. D.Pa.1958, 160 F.Supp. 718.